## A. H. TEAT ET AL. V. LAFAYETTE JONES ET AL.

No. 6496.   Decided January 29, 1936.
(89 S. W., 2d Series, 987.)

*C. F. Richards,* of Lockhart, *E. A. Camp,* of Rockdale, and *W. G. Banks,* of Houston, for plaintiffs in error.

Upon the acceptance of title by A. H. Teat on March 11th through the filing of his deed from Jones, Teat became bound upon his contract and for the payment of the draft of which Dean and Adkisson had full notice and they necessarily took title subject to the equities between Jones and Teat. That by permitting Jones to retain the draft and demand and receive payment therefor from A. H. Teat after removal of Jones' disabilities, Dean and Adkisson as well as Jones became bound by the transaction. Teat, being first in equity, first in time of filing, and first in time of enforced payment of consideration gives to him the prior title and especially so since the acceptance of title by Dean and Adkisson was entirely optional and subject to prior title. Harris v. Musgrove, 59 Texas, 401; Clark v. Van Court, 100 Ind., 113, 50 Am. Rep., 774; Anderson v. Seward, 40 Ohio St., 325, 48 Am. Rep., 687; Peterson v. Laik, 24 Mo., 541, 69 Am. Dec., 441; Simpson v. Searcy, 10 Texas Civ. App., 406, 32 S. W., 849.

*W. H. Sanford* and *Conan Cantwell,* both of Longview, for defendants in error.

After an infant has reached his majority and disaffirmed a former deed, he can deal with his property as he chooses, and those to whom he afterwards sells it may rely on his disaffirmance. Peak v. Cain, 63 S. W., 177; 1 Parsons on Contracts, 329; 23 Tex. Jur., 743; 31 C. J., 1023.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

This suit was brought by Albert Adkisson and D. P. Dean, copartners, against H. H. Coffield, to try title to one-half

interest in the mineral estate in an undivided one-eighth interest in a certain tract of 54½ acres of land in Gregg County. They claim title under Lafayette Jones. Coffield, by cross-action, claimed title to the mineral estate through a mineral deed executed by Jones to A. H. Teat, and sought judgment quieting his title. Jones became a party defendant to Coffield's cross-action. Coffield also vouched in A. H. Teat as warrantor. The case was tried before a jury, but at the conclusion of the testimony the trial court peremptorily instructed the jury to return a verdict for Coffield, and judgment was rendered accordingly. Adkisson, Dean and Jones appealed, and the Court of Civil Appeals affirmed the judgment as to Jones, but reversed and rendered as to Adkisson and Dean. 57 S. W. (2d) 617. Coffield and Teat applied to the Supreme Court for the writ of error. In their application they complained of the action of the Court of Civil Appeals in rendering judgment for Adkisson and Dean. The application was granted and was afterwards amended. Jones has not appealed from the judgment of the Court of Civil Appeals.

The facts material to the grounds of error specified in the amended application are substantially as follows:

On March 9, 1931, Lafayette Jones was a minor, being a few weeks under twenty years of age. He was working in Fort Worth at the time. He owned, by inheritance from his mother, an undivided one-eighth interest in the 54½ acre tract of land in Gregg County. On the date mentioned he executed and delivered to A. H. Teat a mineral deed conveying to Teat the entire mineral estate in his undivided one-eighth interest in the tract. The deed recited a cash consideration of $125. For this amount Teat drew a draft in favor of Jones against a bank in the city of Longview in Gregg County. Jones, on the same day, deposited the draft with a bank in Fort Worth for collection. Teat duly put the deed of record in Gregg County on March 11, 1931. The Fort Worth bank duly forwarded the purchase money draft to Longview bank for payment, but same was returned unpaid for the reason that Teat had no funds on deposit with the drawee bank. Afterwards, on March 21, 1931, the Fort Worth bank, at the instance of Jones, returned the draft to the Longview bank with instructions to hold same and communicate with Teat regarding its payment. On April 25, 1931, Teat took up the draft at the Longview bank by paying it, and the last mentioned bank remitted the proceeds to the

Fort Worth bank and this bank, on April 27, 1931, issued to Jones a cashier's check for the $125. On May 22, 1931, Jones cashed the cashier's check and kept the money. In the meantime, to-wit, on March 24, 1931, the disabilities of Jones, as a minor, were duly removed by judgment of the district court at Fort Worth. The next day, to-wit, on March 25, 1931, Jones entered into a contract in writing with Dean, who was acting for the partnership composed of himself and Adkisson, whereby Jones agreed, for a cash consideration to be paid therefor, to execute a deed to Adkisson for one-half interest in said mineral estate which was covered by the deed to Teat. This contract of sale will be designated in this opinion as it is designated by counsel, namely, as an escrow agreement. By the terms of the agreement the deed to Adkisson and the agreed amount of purchase money therefor were to be deposited in a bank at Fort Worth, in escrow, pending the investigation by Adkisson and Dean of the title to the tract of land. The mineral deed to Adkisson was duly signed and acknowledged by Jones contemporaneously with the escrow agreement, and said deed and the agreed amount of purchase money were at once deposited in escrow as provided in the agreement. The escrow agreement was duly recorded in Gregg County on March 26, 1931. Adkisson and Dean had actual notice of the deed to Teat at the time they made the escrow agreement with Jones; and Teat, at the time he paid the purchase money draft for his deed on April 25, 1931, had received actual notice of said escrow agreement. On April 29, 1931, Adkisson and Dean had completed their investigation of the title to the tract of land, and on that date the escrow bank, in accordance with the terms of the escrow agreement, delivered to them the mineral deed and turned over the agreed purchase money therefor to Jones. Teat, after paying the purchase money draft at the Longview bank, deeded to W. W. Hawkins the mineral estate covered by the deed he had received from Jones. Hawkins, in turn, deeded same to Coffield.

█ As the case comes to this Court, the controversy is between Teat and Coffield on one hand, and Adkisson and Dean on the other, respecting the half interest in the mineral estate covered by the mineral deed executed by Lafayette Jones to Adkisson. The other branch of the controversy is not before us for review. It is to be observed that the mineral deed to Teat was executed by Jones, and the purchase money draft was for-

warded the second time, at the instance of the latter, to the Longview bank for collection, while Jones rested under the disabilities of minority; and that the draft was paid by Teat after such disabilities of Jones had been removed, and Teat had received notice of the escrow agreement. The plaintiffs in error, Teat and Coffield, contend in effect that the mineral deed to Teat was ratified by Jones by accepting the proceeds of the purchase money draft which Teat had given him, and that such ratification binds Adkisson and Dean. They say in effect that since Jones, by the escrow agreement, contracted to convey to Adkisson but one-half of the property covered by his previous deed to Teat, such fact coupled with the fact that he, Jones, retained control of the purchase money draft which Teat had given him, and afterwards accepted the proceeds thereof, show that he intended to disaffirm but a part of the previous transaction with Teat, and consequently no effective disaffirmance occurred. We are convinced, however, that the facts just stated show, as a matter of law, that Jones intended to disaffirm entirely the transaction with Teat. By the terms of the escrow agreement, Jones became unconditionally bound to convey to Adkisson one-half interest in the mineral estate covered by the deed to Teat. In this respect the terms of the escrow agreement are inconsistent with the terms of the deed to Teat. Neither instrument could have effect according to its terms if the terms of the other be given effect. As regards the matter of disaffirming the Teat deed, the escrow agreement has the same effect as if it had purported a present conveyance. The law regards a conveyance of land by a former minor to a third person, which is inconsistent with a conveyance made by him while under the disabilities of minority, as manifesting an intention to disaffirm the older conveyance. Searcy v. Hunter, 81 Texas, 644, 17 S. W., 372, 26 Am. St. Rep., 837, 23 Tex. Jur., p. 742; 14 R. C. L., p. 237. It is also the settled law that a disaffirmance of the older conveyance has effect to destroy the conveyance entirely. 23 Tex. Jur., p. 743; 14 R. C. L., p. 242; 31 C. J., 1022. The vendee under the later instrument has the right to rely on its terms as manifesting the intention of his vendor, with respect to the other instrument, that the law ascribes to them. It is certain, too, that the vendor could not afterwards, by ratification or even by express agreement, restore the disaffirmed instrument to its original status of priority. Intervening rights of third persons would not be displayed

by the subsequent ratification or agreement. The whole argument of counsel in this respect proceeds upon the erroneous assumption that Jones, after making the escrow agreement, could still hold Teat bound to pay the purchase money draft which was given in the other transaction.

The plaintiffs in error contend further that the Court of Civil Appeals erred in holding, as a matter of law, that Lafayette Jones was a minor at the time he made the deed to Teat. The ground of error as presented in the application does not present the question as to whether or not the case, in respect to the matter of Lafayette's age, was fully developed at the trial, but goes merely to the legal effect of the testimony contained in the record before us. The father of Lafayette testified, without contradiction, that the latter was less than twenty years old at the time mentioned, having been born on April 22, 1911. The contention of the plaintiffs in error is overruled.

The judgment rendered by the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court January 29, 1936.