NUMBER 13-99-310-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


KEVIN LAWRENCE HERTZ, Appellant,


v.



THE STATE OF TEXAS, Appellee.

___________________________________________________________________


On appeal from the 332nd District Court of Hidalgo County,
Texas.

___________________________________________________________________




O P I N I O N



Before Justices Hinojosa, Yañez and Chavez


Opinion by Justice Chavez



 Appellant Kevin Lawrence Hertz was convicted of felony theft of
property valued at more than $20,000 but less than $100,000.(1) A jury
found appellant guilty and the trial court sentenced him to ten years
probation and ordered him to pay $25,000 in restitution. Appellant
organizes his arguments into five issues. We affirm.

 The events that led up to this case are unusual. In order to clearly
apply the law to the facts presented, we will explain them in some
detail. Appellant was entrusted with possession of an 8.43 carat
diamond by Lorenzo Reyes, who is now in federal custody on drug
charges. Reyes instructed appellant to take the diamond to an auction
house in Dallas. Instead, appellant took the diamond to Wendell Curry,
the owner of the McAllen Gold and Silver Exchange. 

 At the time, Curry and appellant had a friendly five-year business
relationship. Appellant asked Curry for a $25,000 loan. He told Curry
that the diamond was his mother's, and explained that "he had a
chance to make a lot of money fast in buying frozen turkeys and selling
them in Mexico." Appellant asked Curry if he would accept the diamond
as collateral for a very short-term loan. Curry appraised the diamond as
being worth between $25,000 and $75,000 and, although not a pawn
broker, loaned appellant $25,000 and kept the diamond as collateral. 
On or about December 27, 1998, they orally agreed that appellant
would pay $25,400 to Curry in four days in return for the diamond.

 In January of 1999, appellant gave Curry $400 and asked for more
time to pay off the loan. Although he accepted the money, Curry
showed a high level of concern about when he was going to receive the
$25,000. In February, appellant reported to Curry that the Mexican
authorities had confiscated his turkeys. Curry continued to pressure
appellant for the $25,000. Eventually, Curry told appellant that he
planned to sell the diamond. Appellant then gave Curry a Rolex watch
in hopes of buying more time. Curry accepted the watch as further
collateral for the loan, but never received any more money from
appellant. On the morning of February 19, Curry called appellant to tell
him that he was going to sell the diamond. Appellant replied that he
would come to the McAllen Gold and Silver Exchange to see Curry at
noon. 

 Appellant waited until after 5:00 and then met Curry alone at his
store. Appellant brought with him stacks of one dollar bills with one
hundred dollar bills on the top and bottom of each stack so that they
appeared to be stacks of one hundred dollar bills and wrapped each
stack with a band labeled $10,000. Curry showed appellant the
diamond, and appellant grabbed it. Appellant apologized for taking the
diamond, they struggled, and appellant ran off with it. Curry chased
appellant and tackled him in the parking lot. Appellant then swallowed
the diamond. Before he started to flee, appellant explained that the
diamond belonged to a drug dealer who would kill him if he didn't
return the diamond. The police were called to the scene, and appellant
was arrested. With the use of an x-ray machine and a laxative, the
State located and gained possession of the diamond. The diamond is
now in the possession of federal law enforcement authorities.

 In his first issue, appellant argues that the trial court improperly
excluded evidence when it denied his request to reopen and present to
the jury testimony about the defense of mistake of fact. A court shall
allow testimony to be introduced at any time before the argument of a
cause is concluded if it is necessary for the due administration of
justice. Tex. Code Crim. Proc. Ann. art. 36.02 (Vernon 1981). The
decision to reopen a case is left up to the discretion of the trial court. 
Cain v. State, 666 S.W.2d 109, 111 (Tex. Crim. App. 1984). The trial
court abuses its discretion if it refuses to reopen a case when the
following conditions are met: 1) the witness is present and ready to
testify; 2) the request to reopen is made before the charge is made to
the jury and final arguments are made; 3) the judge has some indication
of what the testimony will be, that the testimony was material to the
resolution of disputed issues and bore directly on the main issues in the
case; and 4) there was no showing that the introduction of testimony
would impede the trial or interfere with the orderly administration of
justice. Doyle v. State, 24 S.W.3d 598, 602-03 (Tex. App.--Corpus
Christi 2000, no pet. h.). Here, the trial court did not abuse its
discretion because the proffered testimony is not material to the
resolution of disputed issues.

 It is a defense to prosecution that an actor, through mistake,
formed a reasonable belief about a matter of fact if his mistaken belief
negated the kind of culpability required for commission of the offense. 
Tex. Pen. Code Ann. § 8.02(a) (Vernon 1994); Willis v. State, 790 S.W.2d
307, 314 (Tex. Crim. App. 1990). A defendant is entitled to an
instruction on any defensive theory if the issue is raised by the
evidence, whether that evidence is strong or weak, unimpeached or
contradicted, and regardless of what the trial court may think about the
credibility of the defense. Hamel v. State, 916 S.W.2d 491, 493 (Tex.
Crim. App. 1996). This entitlement includes mistake of fact
instructions. Granger v. State, 3 S.W.3d 36, 39 (Tex. Crim. App. 1999).

 The testimony appellant sought to admit was that of Ricardo
Alaniz, a local lawyer, about a conversation he had with appellant in
which he gave legal advice to appellant, then told appellant that he did
not feel qualified to take his case and recommended another lawyer. 
Alaniz told appellant that he had a right under the law to use self-help
to regain possession of the diamond. The legal advice was incorrect. 
 Appellant argues that because he entered into a usurious contract with
Curry, instead of calling the police or pursuing a civil cause of action, he
rightfully entered Curry's place of business, attempted to deceive Curry
with one dollar bills bound like one hundred dollar bills, caused a breach
of the peace, took the diamond back from Curry and swallowed it. 
Appellant bases this argument on little more than the bare assertions
of Alaniz and of Joseph Connors, his attorney at trial and on appeal. 
See Goulet v. Schweiker, 555 F. Supp. 1250, 1260 (D. Vt. 1983) ("a
bare assertion is not necessarily the naked truth").

 Under the liberal definition of "owner" in the penal code, Curry
was the owner of the diamond. See Tex. Pen. Code Ann. §1.07(a)(35)(A)
(Vernon 1994). The penal code definition of "owner" includes "any
person who has title to the property, possession of the property,
whether lawful or not, or a greater right to possession of the property
than the owner." Id; Epps v. State, 24 S.W.3d 872, 876 (Tex. App.--Corpus Christi 2000, no pet. h.). Appropriation of property is unlawful
if it is without the owner's effective consent. Tex. Pen. Code Ann.
§31.03(b)(1) (Vernon Supp. 2000).(2) Even if Curry's possession of the
diamond was based on a usurious loan, appellant lost his legal right to
possession of the diamond after he pawned it because at that point
Curry had the greater right of possession and would be treated as the
owner. Tex. Pen. Code Ann. §1.07(a)(35)(A) (Vernon 1994). Since the
law protects possession, whether legal or not, Curry had a greater right
to possession than appellant. Id; Looney v. State, 189 S.W. 954, 955
(Tex. Crim. App. 1916); Fleischman v. State, 231 S.W. 397, 398 (Tex.
Crim. App. 1921); See Blackburn v. State, 44 Tex. 457, 462 (1876) (if
goods are stolen from someone who does not actually own them, but
does possess them, that individual retains a greater right of possession
than a thief); see also State v. Pokini, 45 Haw. 295, 304 (1961) (a thief
in possession of stolen property has an interest in the stolen chattels
stronger than anyone other than the real owner of the property). Thus,
in these circumstances, where a loan is allegedly usurious, the alleged
loan shark with possession of property has a greater right to that
property than a party who illegally appropriated it for his own use. See
Tex. Pen. Code Ann. §1.07(a)(35)(A) (Vernon 1994).

 The proffered testimony is therefore not material to the resolution
of disputed issues because it would provide evidence that appellant had
a mistaken belief of the law, not a mistake of fact. Tex. Pen. Code Ann.
§ 8.03(a) (Vernon 1994). We overrule appellant's first issue.

 In his second issue, appellant argues that the trial court could not
have properly required him to pay restitution because the underlying
contract between appellant and Curry was usurious. Even if the
underlying contract were usurious, Curry had a greater right to the
diamond than appellant, so no legal finding regarding usury was
necessary for the jury to determine the outcome of this case. See Tex.
Pen. Code Ann. §§1.07(a)(35)(A), 31.03(b)(1), 31.03 (e)(5) (Vernon 1994
& Supp. 2000). We therefore overrule appellant's second issue.

 In his third issue, appellant argues that the trial court erred by not
providing the jury with instructions regarding usury and mistake of fact. 
Despite the fact that no basis existed to require a mistake of fact
instruction, appellant did in fact receive such an instruction. No legal
finding of usury was necessary for the jury to determine the outcome
of this case because appellant was no longer the legal owner of the
diamond after he pawned it. See Tex. Pen. Code Ann. §1.07(a)(35)(A)
(Vernon 1994). No finding of usury by Curry would operate to excuse
appellant's conduct or provide a defense to the charge of theft. Tex.
Pen. Code Ann. §31.03 (Vernon Supp. 2000). Appellant therefore had
no legal basis for his request for jury instructions regarding usury. We
overrule appellant's third issue.

 In his fourth and fifth issues, appellant raises eight arguments that
there was legally insufficient evidence to convict him. To review the
legal sufficiency of the evidence, the reviewing court must view the
evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the elements of the
offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319 (1979); Wilson v. State, 9 S.W.3d 136, 141 (Tex. Crim. App. 1999).

 We will first address appellant's first, fourth, fifth, sixth, seventh
and eighth arguments because they are all based on the contention that
Curry had no ownership rights in the diamond. Even if Curry's
possession was based on a usurious loan, he was the legally protected
owner of the diamond. See Tex. Pen. Code Ann. §1.07(a)(35)(A) (Vernon
1994). Appellant's arguments are based on civil cases and civil statutes
regarding bailment and usury. Appellant apparently(3) attempts to use
this law as authority by arguing that Youngblood v. State, 658 S.W.2d
598 (Tex. Crim. App. 1983), allows the application of civil law to
criminal cases.

 In Youngblood, a minor appealed his conviction for unlawful
appropriation of an automobile. Id. at 599. The court of criminal
appeals ruled that the defendant's repossession of the automobile,
which he had sold to an adult, and his subsequent sale of the vehicle
constituted a disaffirmance of the contract between him and the initial
purchaser. Id. at 599-600. The defendant's disaffirmance gave him the
greater right of possession in the automobile than the initial purchaser
and therefore prevented him from being convicted of unlawfully
appropriating the vehicle from the initial purchaser. Id. In order to
make this decision, the court of criminal appeals relied on civil contract
law regarding the right of a minor to disaffirm a contract. Id.

 We accept Youngblood for the proposition that principles of civil
law may, in some circumstances, be used to determine the underlying
facts in criminal cases. This proposition is of no effect because whether
or not Curry violated usury law or any other law, Curry was the legally
protected owner under the law and appellant took the diamond from
him without a legally protected affirmative defense. We overrule
appellant's first, fourth, fifth, sixth, seventh and eighth legal sufficiency
arguments.

 In his second argument on insufficiency, appellant alleges a fatal
variance in the complainant's name. Under the rule of idem sonas, if
names may be sounded alike without doing violence to the power of the
letters found in the variant orthography, then the variance or
misspelling is immaterial. Martin v. State, 541 S.W.2d 605, 608 (Tex.
Crim. App. 1976). Issues of idem sonas are questions of fact for the
jury. The jury was instructed on the law of idem sonas and found no
fatal variance between "W-E-N-D-A-L-L and W-E-N-D-E-L-L" as the
proper representation of Curry's first name. We overrule appellant's
second legal sufficiency argument.

 In his third argument on insufficiency, appellant argues that this
case merely involved a civil dispute. To support this argument
appellant draws our attention to Stockman v. State, 826 S.W.2d 627
(Tex. App.--Dallas 1992, pet. ref'd) and Gornick v. State, 947 S.W.2d
678 (Tex. App.--Texarkana 1997, no pet.). Each of these cases is
inapplicable. Both deal with civil disputes, with well documented,
peaceful underlying disagreements, that eventually escalated into
criminal matters. In the case before us today there was never any
communication between the parties as to any civil dispute. Appellant
never informed Curry that he contested Curry's right to possession of
the diamond. Instead, appellant deceived Curry with one dollar bills
bundled like one hundred dollar bills, swiped the diamond from Curry's
hand, and even went to such lengths as instigating a struggle and
ultimately swallowing the diamond. We overrule appellant's fourth and
fifth issues.

 We AFFIRM the judgment of the trial court.

 MELCHOR CHAVEZ

 Justice


Do not publish.

TEX. R. APP. P. 47.3.


Opinion delivered and filed this

the 21st day of December, 2000.

1. Tex. Pen. Code Ann. § 31.03 (e)(5) (Vernon Supp. 2000).
2. Appellant had an ownership right in the diamond while serving
as a bailor for the purpose of taking it to an auction house in Dallas. 
Appellant illegally appropriated the diamond when he pawned it,
without Reyes' consent, to Curry. Tex. Pen. Code Ann. §31.03(b)(1)
(Vernon Supp. 2000); see Williams v. State, 34 Tex. 558, 560 (1871)
("The trespass which is essential to constitute theft, in the case of a
bailment, is not the act of taking possession, for that was with the
consent of the owner, but it is after the act of taking and embezzling the
property itself"). This theft, however, is not the theft before the court. 
Appellant was indicted for stealing from Curry, not Reyes.
3. Appellant's brief is unclear. See Tex. R. App. P. 38.1(h). In the
interests of justice we nonetheless address the arguments he raises for
our review.